PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ALFREDO HOMES SUSI, a/k/a
Freddie,

*Defendant-Appellant.*

No. 11-4041

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Frank D. Whitney, District Judge.
(3:07-cr-00119-FDW-4)

Argued: January 24, 2012

Decided: March 21, 2012

Before WILKINSON, DUNCAN, and AGEE,
Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge Duncan concurred.

## COUNSEL

**ARGUED:** Michael David Gelety, MICHAEL D. GELETY ATTORNEY AT LAW, Fort Lauderdale, Florida, for Appellant. Michael Alan Rotker, UNITED STATES DEPART-

MENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Lanny Breuer, Assistant Attorney General, Greg D. Andres, Acting Deputy Assistant Attorney General, Ellen R. Meltzer, Patrick M. Donley, Peter B. Loewenberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

## OPINION

AGEE, Circuit Judge:

Alfredo Homes Susi appeals the sentence imposed following remand for resentencing. In an earlier appeal, we affirmed Susi's convictions on one count of conspiracy to defraud, in violation of 18 U.S.C. § 371, and multiple counts of aiding and abetting wire fraud, in violation of 18 U.S.C. § 1343. *United States v. Susi* ("*Susi I*"), 378 F. App'x 277, 288 (4th Cir. 2010) (per curiam) (unpublished). However, we "vacate[d] Susi's sentence, including the order of restitution, and remand[ed] the case for resentencing consistent with [the] opinion." *Id.* After resentencing, Susi now raises the following challenges to his new sentence: (1) the district court erred in not recalculating his recommended Sentencing Guidelines range as part of the resentencing; (2) the sentence is substantively unreasonable because the district court imposed the sentence based on the impermissible factor that Susi exercised his right to trial; and (3) the sentence is procedurally and substantively unreasonable because the district court failed to provide an individualized and adequate explanation for the sentence and did not properly weigh the 18 U.S.C. § 3553(a) factors. For the reasons that follow, we affirm the judgment of the district court.

I.

Susi's convictions arose from his participation in a telemarketing sweepstakes scheme in Costa Rica. Susi worked at one

of the approximately sixteen call centers operating in Costa Rica that functioned independently but employed the same basic technique. We described the criminal scheme in greater detail in our prior opinion, and do not need to reiterate it here. *Susi I*, 378 F. App'x at 280. Although many of the other call center operatives entered into plea agreements, Susi pleaded not guilty to the offenses with which he was charged. The case went to trial and Susi was convicted by a jury.

The pre-sentence report ("PSR") determined that the actual loss attributable to the call center where Susi worked for the period of time he worked there was approximately $760,000. Susi did not object to this computation. And although Susi initially objected to the PSR's Sentencing Guidelines calculation of an advisory Guidelines range of 168 to 210 months' imprisonment, he later withdrew those objections. Instead, he argued for a variance sentence based on his limited role in the conspiracy. The district court imposed a within Guidelines sentence of 180 months' imprisonment for each count of aiding and abetting wire fraud and 60 months' imprisonment for the conspiracy offense, each to be served concurrently. The district court also ordered restitution in the amount of $4.2 million, based on an estimated loss amount resulting from all sixteen call centers.

On appeal, we affirmed Susi's convictions, but found the district court erred with respect to Susi's sentence. Consistent with his prior withdrawal of objections to the Sentencing Guidelines range calculation, Susi did not raise any issue related to the calculation of the Sentencing Guidelines range. Instead, he asserted the district court erred in holding Susi responsible for a conspiracy involving all sixteen call centers that resulted in losses of $4.2 million because the only evidence in the record related to Susi's participation in one call center. We observed that although the district court recognized Susi only worked for one call center and was "directly responsible for a small portion of that," it also had stated in its summary of the nature and scope of Susi's offense that

"*this fraud* involved million and millions of dollars," referring to the loss attributable to the operation of all sixteen call centers rather than just the one where Susi worked. *Id.* at 286-87 (citation omitted). Accordingly, we held "the district court abused its discretion by basing Susi's sentence on the clearly erroneous understanding that the fraud of which Susi was convicted resulted in $4.2 million in losses. This is true notwithstanding the fact that the sentence was within the properly calculated advisory Guidelines range . . . ." *Id.* at 287. The district court's error thus affected its assessment of the § 3553(a) factors, but "[i]t also follow[ed] that the district court abused its discretion by ordering that Susi pay $4.2 million in restitution." *Id.* As we explained:

> Susi was charged with and convicted of participating in a conspiracy involving only one call center, and not of a conspiracy involving all sixteen Costa Rican call centers. Thus the restitution order in this case should also have been "limited to the losses attributable" to [that one] call center conspiracy.

*Id.* at 288. Accordingly, we "vacate[d] Susi's sentence, including the order of restitution, and remand[ed] the case for resentencing consistent with [our] opinion." *Id.*

On remand, Susi filed objections to the supplemented PSR, challenging numerous components of the Sentencing Guidelines calculation, none of which had changed from the original PSR Guidelines calculation. He also filed materials in support of a motion for a downward departure or variance, alleging he had shown substantial assistance to Florida law enforcement related to an unrelated ongoing state drug trafficking investigation and prosecution.

The district court heard Susi's arguments at the outset of the resentencing hearing, expressing concern whether it could "reopen" the Guidelines in light of the limited scope of remand and this Court's conclusion that the Guidelines had

been properly calculated. After hearing the parties' arguments, the district court concluded that it could not recalculate the Guidelines because the "law of the case" doctrine and mandate rule precluded it from doing so given that our prior opinion stated that the Guidelines range was proper and resentencing was based on an error in the § 3553(a) and restitution analyses. (J.A. 128.)

The parties then argued as to what a proper sentence would be in light of the § 3553(a) factors. Susi's arguments centered on the following considerations, which he believed supported a downward variance: his early cooperation and acceptance of responsibility; his assistance in the Florida state prosecution; his exceptional remorse, as demonstrated by a written and in-court apology; the disparity of sentences between Susi and other conspirators, particularly the disparity between Susi and conspirators who did not exercise their constitutional right to go to trial; credit for time he had been incarcerated for civil contempt given that he had received an obstruction of justice Guidelines enhancement factoring that "contempt" into the calculation; his relatively small role in the conspiracy; and his repatriation of $1.1 million in restitution to the Government.

The district court imposed a below-Guidelines sentence of 160 months' imprisonment for each count of aiding and abetting wire fraud, and sixty months' imprisonment for the conspiracy, to run concurrently. In so doing, the court "considered all of the sentencing factors," and "highlighted a few of the sentencing factors that it [thought were] particularly important in this case[,]" including the nature and circumstances of the offense, the seriousness of the offense, and the need for general deterrence. (J.A. 163.) The court specifically rejected Susi's arguments that he was entitled to a downward variance based on exceptional remorse, early cooperation, or in order to avoid an unwarranted sentencing disparity. But it did indicate that Susi's cooperation in the Florida drug trafficking offense and his repatriation of $1.1 million to the United States warranted a moderate downward

variance, and that Susi's showing of remorse would also "impact his sentence." (J.A. 156.) Lastly, the district court ordered restitution in the amount of $1,105,000.

Susi noted a timely appeal, and we have jurisdiction pursuant to 18 U.S.C. § 3742.

## II.

We begin by briefly reiterating the district court's duty when sentencing a defendant, and how we review that process. "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Once that is completed, the district court must give "both parties an opportunity to argue for whatever sentence they deem appropriate" and the district court "then consider[s] all of the § 3553(a) factors to determine whether they support the sentence requested by a party. *Id.* at 49-50.

We review a sentence for reasonableness, applying an abuse of discretion standard. *Id.* at 51. In conducting that review, the Court first

> ensure[s] that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*Id.* If we find no significant procedural error, then we consider the substantive reasonableness of the sentence imposed, taking "into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.*

## A.

Susi first challenges the district court's determination that it could not re-open the Sentencing Guidelines calculation under the "law of the case" doctrine or mandate rule. Specifically, the district court observed that "[t]he Fourth Circuit has determined that the Guidelines were properly calculated and that Mr. Susi withdrew his objections" to that calculation; accordingly, "the Fourth Circuit has already decided on the Guidelines issue for me." (J.A. 80-81.) We review de novo the district court's interpretation of the mandate. *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 480 (4th Cir. 2007).

Susi contends that he was entitled to a de novo hearing at resentencing, notwithstanding his previous withdrawal of any objections to the Guidelines calculation and his failure to raise any issue related to the Guidelines calculation on appeal. This is so, he asserts, because this Court's remand vacated the sentence in its entirety and thus permitted the district court to consider the sentence anew, including entertaining any objections to the calculation of the Guidelines range.

The Government counters that this Court's remand was limited to the issues of restitution and the § 3553(a) analysis, and that it was not necessary to re-examine the Sentencing Guidelines in order to correct the error in the original sentencing. Furthermore, it points to Susi's withdrawal of any objection to the Guidelines calculation and his failure to raise any associated error on appeal as evidence that the Guidelines calculation was not in dispute in the original appeal and thus was not part of this Court's remand for resentencing.

The mandate rule governs what issues the lower court is permitted to consider on remand—it is bound to carry out the mandate of the higher court, but may not reconsider issues the mandate laid to rest. As we have previously stated:

> Because this mandate rule is merely a specific appli-
> cation of the law of the case doctrine, in the absence
> of exceptional circumstances, it compels compliance
> on remand with the dictates of a superior court and
> forecloses relitigation of issues expressly or
> impliedly decided by the appellate court. In addition,
> the rule forecloses litigation of issues decided by the
> district court but foregone on appeal or otherwise
> waived, for example because they were not raised in
> the district court. . . . However, to the extent that the
> mandate of the appellate court instructs or permits
> reconsideration of sentencing issues on remand, the
> district court may consider the issue de novo, enter-
> taining relevant evidence on that issue that it could
> have heard at the first hearing.

*United States v. Bell*, 5 F.3d 64, 66-67 (4th Cir. 1993) (quota-
tion marks, citations, and alterations omitted).

We need not resolve whether the district court erred in con-
cluding that it was barred from reconsidering the Sentencing
Guidelines calculation, because even if we assume that the
district court erred in this respect, that error was harmless
under the facts of this case.

The language of the mandate, although vacating the sen-
tence in its entirety, was limited only to "resentencing consis-
tent with this opinion." *Susi I*, 378 F. App'x at 288. The
sentencing error identified by this Court dealt with the district
court's consideration of factors outside the scope of the record
during the § 3553(a) analysis and in calculating the amount of
restitution ordered. In the initial sentencing, the district court
erred in considering as a basis for Susi's sentence that the
conspiracy entailed sixteen call centers instead of just the one
where Susi worked, and in attributing a $4.2 million loss from
all the call centers to him instead of an amount limited to the
one call center. This error in no way impacted the calculation
of Susi's Guidelines range.

Indeed, our prior opinion expressly recognized this bifurcation when it observed that the district court's decision constituted reversible error "notwithstanding the fact that the sentence was within the properly calculated advisory Guidelines range, to which Susi withdrew his objections." *Id.* at 287. Proceedings "consistent with [our] opinion" thus would in no way require recalculation of an established "properly calculated advisory Guidelines range." Thus, the Guidelines calculation was not an issue in the original appeal and review of that calculation was not expressly governed by the Court's holding or mandate in *Susi I*.

Susi contends that under the Supreme Court's recent decision in *Pepper v. United States*, 131 S. Ct. 1229 (2011), the district court was required to conduct a de novo resentencing that included recalculation of the Sentencing Guidelines and that the court erred in determining that the "law of the case" precluded its doing so. We do not read *Pepper* as broadly as Susi contends. *Pepper* examined whether the law of the case doctrine required the district court on resentencing "to adhere to the original sentencing judge's decision granting a 40 percent downward departure." *Id.* at 1250.[1] The Supreme Court held that where an appellate court sets aside a defendant's "entire sentence and remand[s] for a *de novo* resentencing" pursuant to a general mandate, the district court on resentencing is not bound by its prior consideration of the case. *Id.* at 1250-51. This is so, the Court held, because

> [a] criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent. Because a district court's original sentencing intent may be undermined by altering one portion of the calculus, an appellate court when reversing one part of a defendant's sentence may vacate the entire

---

[1]The Supreme Court noted that Pepper had "abandoned any argument that the mandate itself restricted the District Court from imposing a substantial assistance departure." *Id.* at 1250.

sentence so that, on remand, the trial court can reconfigure the sentencing plan to satisfy the sentencing factors in 18 U.S.C. § 3553(a).

*Id.* at 1251 (internal quotation marks, citations, and alterations omitted).

Nothing in *Pepper*, however, requires the district court to reconsider every component of the sentencing decision during resentencing. *Pepper* thus supports the conclusion that even if the district court erred in concluding that the language of *Susi I* precluded it from reexamining the Guidelines calculation, it does not follow that, as Susi would have us hold, the district court erred in failing to reopen the Guidelines calculation.

For even if the district court erred in believing that it could not reexamine the Guidelines calculation, the record provides ample support for why such an error was harmless. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *Puckett v. United States*, 129 S. Ct. 1423, 1432 (2009) (observing that "procedural errors at sentencing . . . are routinely subject to harmlessness review")); *see also United States v. Chase*, 296 F.3d 247, 249 (4th Cir. 2002) (concluding any error in district court's application of the mandate rule was harmless).

The harmlessness of any error is apparent for many reasons. To begin with, *Pepper* did not eviscerate a sentencing court's discretion to decline to consider waived arguments on remand. Only a handful of courts of appeals have considered the impact of *Pepper*, and specifically its impact on the law of the case doctrine and the principle of waiver. Of these, we find the Seventh Circuit's analysis in *United States v. Barnes*, 660 F.3d 1000 (7th Cir. 2011), persuasive:

At issue, then, is what the *Pepper* Court intended by the term "de novo" in the re-sentencing context.

[Petitioners] interpret the Court's dicta that general remand orders "wipe the slate clean" as entitling them to present any and all new arguments at re-sentencing—regardless of their relevance to the error giving rise to the remand.

[N]o court has concluded that *Pepper* operates to abolish waiver in the context of re-sentencing. As it discusses de novo re-sentencing, the Court emphasizes a district court's ability to "effectuate its sentencing intent," *id.* at 1251, underscoring its concern that re-sentencing courts should not be bound by their predecessors or rotely input the Courts of Appeals' changes into their original sentencing calculations. Its holding thus stands for the proposition that general remands render a district court unconstrained by any element of the prior sentence. *Id.*

Allowing a district court to freely balance already and properly raised arguments to preserve or revise its sentencing objectives does not equate to carte blanche for defendants to raise new arguments unrelated to the issues raised on appeal. . . .

We, therefore, hold that when a case is generally remanded to the district court for re-sentencing, the district court may entertain new arguments as necessary to effectuate its sentencing intent, but it is not obligated to consider any new evidence or arguments beyond that relevant to the issues raised on appeal. Accordingly, the district court did not err by refusing to consider [the Petitioners'] new arguments as beyond the scope of remand.

*Id.* at 1007-08 (footnote omitted). Thus, while *Pepper* allows district courts the flexibility to address any component of the sentencing decision that it must in order to "effectuate its sentencing intent," that decision does not fundamentally alter the

rule of waiver. Here, it was not necessary to recalculate the Sentencing Guidelines in order to address the error that was the cause for the remand, or to tailor an appropriate sentence taking into consideration § 3553(a)'s full panoply of sentencing factors. The error requiring resentencing was unrelated to the Sentencing Guidelines calculation, and the § 3553(a) assessment is a separate part of the sentencing process, occurring after the Guidelines range is established. Consequently, an error in this latter stage of sentencing does not implicate the former stage.[2]

Apart from these considerations, a district court would be well within its authority to decline to revisit every sentencing issue on remand, unless the mandate indicates otherwise or the interrelationship of sentencing components makes it advisable to do so. There is no reason to require a district court to plow through the same arguments, take the same evidence, and make the same findings that it has already made in the original sentencing where such an effort would serve no purpose. Such duplication for the sake of duplication bears no reasonable relationship to the ultimate objective of effectuating the trial court's sentencing aims. Nor is there a requirement that district courts disregard a prior waiver and entertain new evidence and arguments where such is not necessary to effectuate the court's sentencing intent. For these reasons, we find the error, if any, harmless.

---

[2]Susi does contend that reopening the Sentencing Guidelines was necessary because the Guidelines range reflected the same error the district court committed with respect to the § 3553(a) analysis and calculation of restitution, in that the total offense level was set based on too high of a loss amount and number of victims. Susi's argument is factually incorrect. As noted earlier, the PSR's Guidelines calculation used a loss amount of $760,000 rather than the $4.2 million improper amount and Susi did not contest the $760,000 amount at his initial sentencing or the appeal. Moreover, the PSR did not include victims from all sixteen call centers, just Susi's center. Susi's Guidelines calculation was based on the proper considerations, and thus the district court's unrelated error in the original sentencing proceeding did not in any way alter the proper calculation of the Guidelines range.

B.

Susi next contends that his sentence is substantively unreasonable because comments the district court made during sentencing show that the length of his sentence was in part to punish him for exercising his right to trial. Susi posits that "the record and circumstances and results make it clear" that his sentence represents a vindictive punishment for exercising his right to trial and successfully appealing his first sentence because the district court referred to the fact that Susi's decision to go to trial was unnecessary, imposed a "cost to the taxpayers," and that he stood out from his co-conspirators as a result of not cooperating from the outset by pleading guilty. (Opening Br. 54 (citing J.A. 122, 159).) Because his sentence is so much higher than "similarly situated" co-conspirators, Susi asserts the district court unfairly penalized him for exercising his right to trial.

We previously articulated the applicable analysis as follows:

> A defendant's right to due process requires that there be no vindictiveness against [him] for having chosen to exercise [his] constitutional rights. Because motives are often difficult to prove, the Supreme Court has determined that, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right . . . it [is] necessary to presume an improper vindictive motive. Such a presumption, however, is only warranted in cases in which a reasonable likelihood of vindictiveness exists.

> Moreover, a presumption of prosecutorial vindictiveness is generally warranted only in a post-conviction setting, such as when a defendant successfully attacks his conviction on appeal, and then receives a harsher sentence on retrial.

*United States v. Perry*, 335 F.3d 316, 323-24 (4th Cir. 2003) (internal quotation marks and citations omitted). As applied to Susi's case, this due process protection extends not only to his exercise of the right to appeal, but also the right to go to trial. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("[P]unish[ing] a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."); *United States v. Olivares*, 292 F.3d 196, 198 (4th Cir. 2002) ("Due process requires that vindictiveness play no role in resentencing the defendant.").

No presumption of vindictiveness applies to Susi's sentencing because his sentence after remand (160 months) was less than his original sentence (180 months). *See United States v. Kincaid*, 964 F.2d 325, 328 (4th Cir. 1992) (holding that the presumption of vindictiveness only applies when "the new sentence is actually harsher than that imposed prior to [the] successful appeal"). Although Susi broadly asserts that the district court punished him during resentencing for exercising his right to appeal, he points to nothing specific from the record to support that claim. Given that Susi received a below-Guidelines range sentence and the absence of anything in the record to suggest otherwise, Susi's claim of vindictiveness for successfully appealing his case has no merit.

Susi does point to several portions of the sentencing hearing to support his claim that the district court punished him for exercising his right to go to trial. Having reviewed the entirety of the sentencing transcript, we do not agree with Susi's contention. Read in context, and as part of the ongoing and lengthy exchange with both attorneys, the district court's references to Susi's decision to go to trial, rather than plead guilty, do not indicate that the court was penalizing Susi for exercising that right. As an initial matter, the specific statements Susi points to do not occur during the court's explanation of the reasons for the sentence it imposed; rather, they are located in the court's dialogue with the attorneys regarding their arguments. More importantly, the court's statements

were made in response to and regarding one of Susi's primary arguments in favor of a downward variance.

During the sentencing hearing, Susi asserted that § 3553(a)(6) — the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct — warranted a downward variance because Susi's Guidelines range was significantly higher than the sentences other members, and even leaders, of the Costa Rican sweepstakes scam had received. Susi also argued that he had exhibited contrition for his participation in the offenses through his rehabilitative and cooperative efforts since his original sentencing, which placed him "if not on a level with the other co-defendants, . . . certainly . . . in a different posture for this Court to consider when . . . looking at the disparity question." (J.A. 109-21.) In the context of engaging Susi's counsel on that question, the district court referred to Susi exercising his right to a trial and thereby

> running up his debt to society . . . causing the government to have to prove its case beyond a reasonable doubt against him, which [is] his absolute constitutional right. But there's a cost to the taxpayer when he does that, and therefore, his debt to society goes up when he refuses to admit his guilt.

(J.A. 121-22.) Susi concurred, and the court continued, "There's a distinction between someone who pleads guilty and someone that goes to trial. That doesn't mean he's not remorseful. . . ." (J.A. 122.) Shortly thereafter, the court stated, "The Supreme Court has said many times and so has the Fourth Circuit that a defendant who chooses to put the [government] to its burden is not cooperating to the point that he should be considered the same as a defendant who admits his guilt and doesn't require the government to" meet its burden. (J.A. 124.)

Taking into consideration Susi's own arguments in favor of a variance and the totality of the district court's statements on this point, we find that the record does not support Susi's claim that the court improperly used his having gone to trial as a basis for sentencing him. Instead, the court's statements reflect the well-recognized principle that defendants who plead guilty can be given the benefit of that cooperation as part of their Guidelines calculation and ultimate sentence, while defendants who exercise their right to a trial have no entitlement to the same benefit. Flowing from that principle is the logical conclusion that § 3553(a)(6)'s avoidance of unwarranted sentencing disparities does not require courts to sentence similarly individuals who go to trial and those who plead guilty. They are not similarly situated for sentencing purposes. *E.g.*, *United States v. Perez-Pena*, 453 F.3d 236, 243 (4th Cir. 2006) ("[C]omparing the sentences of defendants who helped the Government to those of defendants who did not . . . is comparing apples and oranges. For this reason, Congress could not have intended that disparities resulting from the exercise of prosecutorial discretion could be determined to be 'unwarranted.'"); *see also United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir.), *cert. denied*, 132 S. Ct. 187 (2011), (recognizing that § 3553(a)(6)'s consideration of sentencing disparities does not reflect that a defendant who goes to trial should be sentenced similarly to a co-offender who pled guilty and testified against the defendant and received a reduced sentence as a result of his cooperation). Here, the district court was dialoguing with Susi regarding additional components contributing to the disparity in the co-conspirators' Guidelines ranges and resulting sentences, but it was not improperly suggesting that Susi's sentence was to punish him for exercising his right to go to trial.[3] Given the totality of the

---

[3]Our conclusion is further supported by the district court's statements during its subsequent explanation for the sentence imposed. In discussing Susi's disparity argument, the court rejected the notion that Susi should be compared to the conspirators who pled guilty, and concluded that "he should be compared to those defendants who were not cooperating and not

district court's statements, we conclude that Susi's sentence was not improperly based on his decision to go to trial or as a result of his successful appeal of his original sentence.

## C.

Susi lastly contends the district court "did not properly consider nor properly apply the individualized sentencing factors or [§] 3553." (Opening Br. 40.) Susi's various assertions boil down to claiming that had the district court given proper weight to his arguments, it would have imposed a lower sentence, and that it failed to adequately explain its reasons for rejecting Susi's arguments. Thus, he challenges both the procedural and substantive reasonableness of his sentence.

Having reviewed the sentencing hearing transcript, we conclude that the district court did not commit any procedural errors. The district court allowed the parties considerable time to argue for what they believed was an appropriate sentence under the § 3553(a) factors. It is clear from the record that the court understood each argument Susi was making in favor of a downward variance and the statement of reasons for the sentence it imposed is twelve pages in the transcript, addressing both the § 3553(a) factors and Susi's arguments. The court's explanation considered the following: the nature and circumstances of Susi's offense (limiting consideration to the one call center), the sophistication of the call center, the seriousness of the offense, the concern for general deterrence, the court's belief that Susi had shown remorse and was not likely to be a future threat for purposes of specific deterrence. Similarly, the district court noted that Susi's remorse had not been

assisting the United States . . . . [Susi's] choosing the wrong pool of defendants to compare himself to." (J.A. 160.) And while the court did conclude that Susi was entitled to a moderate variance in light of Susi's assistance in the unrelated Florida drug trafficking investigation, this constituted a different type of assistance and cooperation than that exhibited by his Costa Rican co-conspirators.

"exceptional" and therefore did not independently warrant a downward variance, but would still impact his sentence. In addition, the court observed that Susi's early cooperation had been shallow and did not independently justify a variance. It also noted that Susi had subsequently repatriated approximately $1.1 million to the United States that would go to the victims, and that this fact would be considered as a factor for a "modest variance," as would Susi's assistance to law enforcement investigating the Florida drug trafficking investigation.

While the district court did not go into length as to all of the § 3553(a) factors, it was not required to do so. *United States v. Carter*, 564 F.3d 325, 329 (4th Cir. 2009) ("[T]he district court need not robotically tick through § 3553(a)'s every subsection.") (internal quotation marks and citation omitted). Certainly the district court's explanation for Susi's sentence, summarized above, is clearly sufficient to satisfy the requirement that the court provide an individualized assessment of the § 3553(a) factors and tailored to Susi's sentence. It also provides an adequate basis for us to review the reasonableness of the sentence imposed. *Id.* at 329-30 ("[A] talismanic recitation of the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decisionmaking or provide an adequate basis for appellate review. . . . [T]he district judge . . . must place on the record an individualized assessment based on the particular facts of the case before it. This individualized assessment need not be elaborate or lengthy, but it must provide a rationale tailored to the particular case at hand and adequate to permit meaningful appellate review.") (internal citations and quotation marks omitted).

Turning to the substantive reasonableness of Susi's sentence, we must consider whether the totality of the circumstances shows that the district court did not abuse its discretion in sentencing Susi to 160 months' imprisonment on the wire fraud counts. We have previously held that "a sen-

tence located within a correctly calculated guidelines range is presumptively reasonable." *United States v. Abu Ali*, 528 F.3d 210, 261 (4th Cir. 2008); *see Rita v. United States*, 551 U.S. 338, 347 (2007) (holding that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines"). However, Susi was sentenced to a term of imprisonment that was below the recommended Guidelines range of 168 to 210 months' imprisonment. We have not previously addressed in a published opinion whether a below-Guidelines sentence is also entitled to a presumption of reasonableness. We hold that it is. This conclusion is inherently logical, for if a challenge to the length of a within-Guidelines sentence is presumptively reasonable, the length of a below-Guidelines sentence would even more inherently be substantively reasonable.[4]

The appropriateness of adopting this presumption is bolstered by the unanimous agreement of the five circuit courts of appeals to have considered the issue as well. *See United States v. Balbin-Mesa*, 643 F.3d 783, 788 (10th Cir. 2011) ("extending the rebuttable presumption of reasonableness to a below-guideline sentence challenged by the defendant as unreasonably harsh"); *United States v. Breland*, 647 F.3d 284, 291 (5th Cir. 2011), *vacated and remanded on other grounds*

---

[4]Prudence dictates that we clarify that this presumption exists when a defendant challenges the *length* of his below Guidelines sentence as being substantively unreasonable. This presumption would not apply where a defendant challenges the substantive reasonableness on other grounds. In addition, this presumption of reasonableness would not be applied where the Government appeals that a district court's sentence is substantively unreasonable. *See, e.g.*, *Abu Ali*, 528 F.3d at 260-61 (applying the usual *Gall* analysis when considering the Government's cross-appeal challenging the substantive reasonableness of a below-Guidelines term of imprisonment); *see also United States v. Engle*, 592 F.3d 495 (4th Cir.), *cert. denied* 131 S. Ct. 165 (2010), (applying no presumption when considering the substantive reasonableness of a sentence of probation when the Guidelines included a term of imprisonment).

*by* 2012 U.S. LEXIS 766 (Jan. 17, 2012) ("A below-Guidelines sentence is presumptively reasonable."); *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008) ("A sentence within a properly calculated guideline range is presumptively reasonable, so it follows that a below-guideline sentence is also presumptively reasonable against an attack by a defendant claiming that the sentence is too high."); *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008) (stating that "simple logic compels the conclusion that, if a [Guidelines sentence] would have been presumptively reasonable in length, [the] defendant's task of persuading us that [a] more lenient sentence . . . is unreasonably long is even more demanding"); *United States v. Canania*, 532 F.3d 764, 773 (8th Cir. 2008) ("[A] sentence below or within the Guidelines range is presumptively reasonable on appeal.").

Having determined that a presumption of reasonableness applies to the length of Susi's sentence, we must consider whether Susi raises any arguments that would rebut the presumption. We conclude there are none. The district court considered Susi's arguments and appropriately exercised its discretion in rejecting or accepting their impact on determining an appropriate sentence. That the court did not agree with Susi as to the value, or relative weight, to give each factor and thus did not sentence Susi to as low a sentence as he desired does not in itself demonstrate an abuse of the court's discretion. Accordingly, we hold that Susi's sentence is both procedurally and substantively reasonable.

## III.

Finding no error in the district court's resentencing of Susi, we affirm the judgment of the district court.

*AFFIRMED*